May it please the Court, good morning. Your Honors, my name is Emmanuel Guerrero, and I am the attorney for the petitioner, you are correct, it is Guieb, Edwin Guieb. With the Court's permission, I'd like to start out by addressing the question that was posed to counsels yesterday afternoon by email as to whether or not the statute at hand, is it a divisible statute or is it indivisible, the Hawaii Theft Statute. I think when we take a look at what that means, we take a look at whether or not the 708, well the Hawaii Theft Statute, the Hawaii State Theft Statute is defined under 708.833. In this particular case it's 833 because it is theft in the fourth degree. 832, 31, and so forth, goes to the element of the offense which increases the theft by the value that is taken, or the value that is alleged to have been taken. Dealing only with this case, the value was $100 or less. But the elements of the offense for theft under the Hawaii State Statute is very, very clear. It is one, under 708.833, is there an intent to deprive or to defraud of someone else's property or services, and then the value amount. The case law that's been cited tells that to us. The government's ---- You know, can I interrupt? Yes, Your Honor. I'm more interested in whether or not, if we look at 708-830, which gives us eight ways a person can commit theft, whether each one of those is a separately defined crime. That is to say, is the statute divisible in that sense? I was getting there, Your Honor. Thank you. Yeah. And the point I am trying to make is this. In the ---- in Hawaii State, the elements or the crime of theft in itself is, in fact, a ---- not 830, it's 831, 32, or 33. 830 tells us the means or the way as to how theft can be committed. For example, number 8 tells us that you can commit theft by taking items from a retail store with the intent to defraud. When you take a look at subsection 1, it tells ---- That's my question, and I think it's a yes-or-no answer. If we have a theft that is, for example, subsection 1 or a theft that, for example, is subsection 8, are those independently defined crimes? That is to say, is the statute divisible in that sense? No, Your Honor. It's not an independent crime because there are no penalties associated with those offenses. Well, then why are you arguing that we should look at subsection 6, because that is a divisibility argument. Well, in subsection 6, the point that was being made was that there is no intent to deprive or to defraud in that case, which the IJ himself actually was of the same opinion, that the subsection 6, in fact, is not a CIMT offense. And the argument was made to show, to reflect to the Court that even if they were to look at it as a divisible offense, under the record of conviction that was present there, there's no supporting ---- Okay. I get it. But when Hawaii charges someone with theft in the fourth degree, do the ---- do the complaints typically refer to 708-830? I don't see that on the complaints regarding your client. Your Honor, if you take a look at the certified record on appeal, the complaints that were filed in this case refer to ---- Refer to 708-833-1, which is simply theft in the fourth degree. If you take a look at page 332, for example, Your Honor, it makes reference to 833.5, which is the penalty provisions for shoplifting, where there is a mandatory ---- 833.5? Yes. Or 830? Is it 833.5 or 830? I believe 833.5 is the sentencing provision, the special double fine sentencing for the petty misdemeanor offense of theft in the fourth degree. So does ---- would a complaint ever refer to 708-838, which is shoplifting? I believe it would appear so. Okay. Because ---- Well, if so, doesn't that suggest that it's divisible? If they're actually charging your client with a particular ---- with theft of a particular kind, namely shoplifting, doesn't the State obligate itself then to prove shoplifting or the ---- or it fails, in which case it sounds like it may be divisible? Let me back up, Your Honor. I may have misspoken. What I meant to say was I would put it down. I would put down the nature of the offense that causes that particular theft to have occurred. But in this particular case, you can see from the record that that is not the case that the State of Hawaii has elected to do. They don't indicate as to what offense it is. They simply state that the elements of the offense that they will be proving to establish the offense of theft in the fourth degree is, one, you took property with intent to deprive or defraud, two, that was someone else's property, and, three, the value is less than $100. Without specifying from 708-830 the manner in which the theft was committed. That is correct, Your Honor. And that's the point that we were trying to ---- the Mystic Web, on behalf of Mystic Web, we were trying to present to the I.J., which the I.J. apparently halfway believed it, because he recognized that the theft statute is not categorically a CIMT offense. But then he went further down. To the BIA, they said, no, the I.J. was wrong. The statute, when you take a look at it, is really ---- it's straightforward. There is no intent to defraud or to deprive on paragraph 6. And, as I've stated before, and you take a look, State v. Atwood, the Hawaii case, tells us, in an opinion, that the elements for the offense of theft is exactly what I stated, intent to deprive another, and the value. And in the same particular case, State v. Atwood, the Hawaii case, tells us, in the footnote, that there are means of committing the theft, and it's under 708-830. The State v. Gaylord, which is the ---- and State v. Boracho, which is a Hawaii case involving ---- well, let me talk about Gaylord, because he was an attorney in Hawaii, and he was hired by a client. He secured, obtained a settlement on behalf of the client, and from another client, he obtained a retainer. He didn't do anything. He absconded. That was theft. The charge was intent to deprive property in a value. The 830, the eight ways of committing theft, are means. They're not elements. They're not separate offenses. They're not separate offenses in itself under the Hawaii statute. Theft is theft. Nothing more. The eight ways are not separate. You cannot charge one with Subsection 1 on 830-830. You cannot charge two, three, or four, and get four separate convictions. There can only be one, and in this particular case, that makes it indivisible. I see I'm running out of time. Why don't we hear from the other side, and you've saved a little time. Thank you, Your Honor. Oh, by the way, Your Honor, it's nice to be back here again. Pleased to have you. Good morning, and may it please the Court, Greg Mack, Counsel for the Respondent, the Attorney General of the United States, just to provide some context for the Court. As the Court is aware, the government has filed a motion to remand based on Almanza-Arenas' decision, which was decided at the time. So what's the implication of your motion to remand? What does that mean? The government is conceding something? Well, not conceding, Your Honor. We're suggesting that the Court remand the case to the Board so that the Board can apply or look at and analyze the impact of Almanza-Arenas on this case. The Almanza-Arenas case looked at whether theft requires a permanent taking or a temporary taking, and the en banc Court said temporary isn't enough. A temporary taking isn't enough with respect to intent to deprive. That decision was issued after the Board's decision in this particular case, so we filed a motion to remand with this Court, asking that the Court send the case back to the Board of Immigration Appeals for it to take a look at the Hawaii theft statute in the context of Almanza-Arenas. And then in addition, as the Court noted, we just got your question yesterday afternoon with respect to whether the modified categorical approach can or should be applied. I think as to both questions, those are questions that in the first instance should be put to the Board. I'm sort of out in front of my skis. I don't have a decision of the Board answering that question, whether the modified categorical approach should be applied or whether or the impact of Almanza-Arenas. Is the question as to whether the modified categorical approach applies in this case one of fact, law, mixed law and fact? I think it's a question of law, because you're looking at what does the Hawaii charge this case. If it's a question of law, then can't we decide it? I don't think so, Your Honor. I think you need a decision from the Board on this particular case. Why? There's no Chevron – there wouldn't be any Chevron deference here. These aren't the Board's regulations. Correct. They aren't the Board regulations, and they speak to elements, what the Court has said in the Ambon case in Marmolejos, that this Court first construes the elements in the statute to determine whether we get into it. If the Board issued a decision and we disagreed with it, could we review it de novo? Yes, you would. Why wouldn't we just decide it here, then? Because I think the Board, in the first instance, should be given the opportunity to look at your question, whether the modified categorical approach – because what you would be doing is taking a look at the facts in this historical record and looking at this Hawaii statute and saying, yes, the modified categorical approach applies. Okay, then I think you do have to then still send it back to the Board anyway to get their construction of whether the modified categorical approach applies. And if you say it does, then they have to go on and make a decision about the impact of whether the modified categorical approach applies or not. So I think that's to both questions. Does the government, does the executive branch have a position as to whether the modified categorical approach applies? I have a position. Are you going to share that with us? I'm going to share it with you, but I just want to be clear that I'm a bit out over my skis because I don't have a decision on the Board. Normally we're in the context of the Board, and I'm here defending the Board's decision, the four corners of the Board's decision. We got your question yesterday afternoon, so I want to be clear about the context. I don't want to circumscribe or confine the Board. I mean, it might be. Counsel, I don't want to tell you how to handle your case. I understand the awkward position that we've put you in. The reasonableness of your position, of the government's litigation position before the panel may determine whether we think it's useful to send it back to the Board or not. I understand, Your Honor. And with that understanding, I think the Board has a position. Counsel, is there any reason why the modified categorical approach was not argued or briefed by the government? I think what happened here is the immigration judge did say the modified categorical approach applied and then went to the Board. The Board said it doesn't matter. From a categorical approach perspective, the Board said all of these provisions in the Hawaii Theft Statute constitute crimes of moral turpitude. So that's how we got here, and that's why the modified categorical approach wasn't briefed below, because the Board said under any approach, under any analysis under the categorical approach, all of these provisions under the Does that mean if we disagree with the Board as to subsection 6, the one on which your adversary relies, we just grant the petition? Is that the end of the matter? I think, accepting those facts, I think that's right, Your Honor. I think we made the point that it still is a CIMT under Hawaii law, but I think so in taking your hypothetical, I think if you disagree with 6 and our position on 6, then I think you do grant the petition. But as the Board said, we disagree with that because they think all provisions under the Hawaii Theft, under 708-830, are CIMT. So I think, you know, we have to look at this case sort of imagining that Amantza Arenas, as well as I think it's the Lorenzo v. Sessions case, which says you take a double categorical approach to look at. If you have a divisible statute on two levels, you have to apply Taylor on those two levels. You have this Hawaii Theft Statute. I think, as Judge Bybee is correct, the complaints, and I think this may be the usual case in Hawaii, they don't necessarily charge 708.830. All you have is theft in the fourth degree. And we don't have in this case, we don't have the jury instructions out of Hawaii in this record here. But I think the Hawaii Theft Statute says you commit theft in these eight ways, and then it goes to theft in the fourth degree in another provision that says, well, theft in the fourth degree is this. And then built into the theft definition, again, 708-830 says here's the ways you commit theft. And then if you get into intent to deprive, they have another provision that says — Which suggests that they're means and not elements. Correct. And I think those are means, not elements. Those are ways that you violate. And I think the way the Board uses — Although it's quite possible that a court would instruct on one particular means and say, well, if this is going to fit shoplifting or it's not going to fit anything.  And I think the way the Board used that language, they said these are the modes of conduct in which the theft statute is violating, which suggests those are means, not elements in the overall — If they are means, not elements, does that mean then that the government's never going to be able to satisfy its burden if we get to a modified categorical approach? Does that mean the whole argument rises or falls? I think that's right. I think that's what Mathis and Decombs says. If it's an indivisible statute and you can't look at means, then you can never get to — you can never, I think, under Decombs and Mathis, you can never get to that categorical approach. Never get to the modified categorical approach. Well, we'll never get to the modified categorical approach. Right. Well, on that assumption, then, that for the moment, assuming that it is an indivisible statute, why is your adversary wrong with respect to subsection 6? Because if you're right as to subsection 6, I gather you lose. I believe that's right. I think his point on subsection 6 was that it's a civil contract in nature. And I think our point was that if they weren't civil contract in nature, that they implicate moral turpitude, Your Honor. I think that's what we said in our brief there. But, again, the Board's position, and the Court certainly may disagree, was all of these provisions, including 6, implicate CIMTs. So if the Court believes that, you know, it's not a CIMT under 6, then, again, I think, yes, you grant the petition. If you disagree with the Board on that point, that all of these modes of violating of the testament. Right. So why isn't subsection 6 something that includes basically a breach of contract? Just refresh real quick, Your Honor. I'll just read subsection 6A, the first sentence. So the head is failure to make required disposition of funds. A says a person intentionally obtains property from anyone upon an agreement, sounds like a contract, or subject to unknown legal obligation, maybe a fiduciary relationship, to make specified payment or other disposition, whether from the property or its proceeds, or from the person's own property reserved in an equivalent amount, and deals with the property as the person's own and fails to make the requirement payment or disposition. I think a breach of contract, that is to say, you give me the money, I'll pay it to somebody else, I'll keep 10 percent for the service, but then you don't do it, that sounds like a breach of contract. It sounds like a breach of contract, but it also may be morally turpitudinous. Well, why is a breach of contract morally turpitudinous under our law about CIMTs? Well, I think what the we pointed to the Hawaii judiciary's language that it's clear that this provision covers only criminal misconduct, not civil matters. And that it was, as we said on page 28, the commentary following the Hawaii theft provisions repudiates Petitioner's claim that this provision doesn't involve an intent to deprive. So it gets back to whether that provision involves an intent to deprive. And, again, acknowledging the aman sa rinza that has that temporary versus permanent provision or analysis in it, it involves an intent to deprive, and therefore, it's morally turpitudinous under 6. Counsel, I have a slightly different question about the intent to deprive, because that's defined in 800. And it looks to me like under the first definition of deprive, there's one definition that describes permanent, which would satisfy our test, and then there's one that describes about the diminution in value, which would come under the BIA's current definition, but we have said is not retroactive.  And apparently would not apply to this Petitioner. So why doesn't that knock this out as a categorical? Well, that was our point about remanding it to the Board to have them take a look at the en banc decision. Isn't it just a matter of us just looking at this and saying, look, there's two definitions here which now satisfy what the Board has said, giving the Board full deference, but we have already said you can't apply it retroactively. And that's just a matter of just looking at the facts and saying this occurred before the Board came up with this new definition. And I think what the Court has said is you can't apply the new definition under the matter of Diaz-Lizarraga, so what I would suggest to the Court is remand it under Almanza-Arenas so that the Board can take a look at whether this other language dealing with permanent versus the substantial diminution, whether that still satisfies its old definition of intent to deprive. The Board hasn't been given an opportunity to do that. That seems like a bit of a stretch, Counsel, since the Board has gone out of its way to create a new definition that includes a diminution in value. But as I understand, Garcia versus Martinez, the Board can't apply that new decision retroactively, so it would have to look at its old definition under intent to deprive, which the Board has never had the opportunity to look at under Almanza-Arenas and figure out whether even with this. If the Board were to come back and say, oh, yeah, it even fits under the old definition, that makes its whole new proceeding irrelevant. Well, it certainly wouldn't have to go back to the immigration judge. The Board would have an opportunity to pronounce on that, and the petitioner would likely disagree. We'd be back here again looking at this, whether the Board was right with respect to applying it. It just feels like the only way that the Board can construe this in a way that goes against the petitioner is to cut against the Board's own interest. Well, no, I don't necessarily agree with that, Your Honor. It deals with the question of intent to deprive. On remand, the petitioner may prevail, and we never get here again. But the point is the Board should be given that opportunity to undertake that analysis, to look at this Hawaii deprive language in the first instance with the understanding of Almanza-Arenas and say, yes, we agree, or no, it doesn't involve intent to deprive that is sufficiently morally turpitudinous. That's all that the government is suggesting, Your Honor. Okay, thank you. Thank you, Your Honor. We saved a little time. Your Honors, I'll be very brief. It's a simple question of law. And a motion to remand to the BIA for them to review their own decision, again, I don't believe it's proper. The question as presented to you is clear. We've made our position clear that it is an indivisible statute. I think even the government themselves agree that 830 are means of committing the offense. Your Honor, unless there's any more questions, I... Okay, thank you very much. Thank both sides for your argument in this case. Categorical, modified categorical, often very tricky, and this case is one of those. Agreed versus session is submitted. Next case on the argument calendar, United States v. Sandhu.
judges: D.W. Nelson, W. Fletcher, Bybee